# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

CHARLEY JAMES                                                   CIVIL ACTION

VERSUS                                                              NO. 20-452

SHERIFF DANIEL EDWARDS, ET AL.                        SECTION: "F"(3)

## PARTIAL REPORT AND RECOMMENDATION

Plaintiff, a state prisoner, filed the instant complaint pursuant to 42 U.S.C. 1983, suing various individuals and asserting numerous claims arising from his incarceration in the Tangipahoa Parish Jail.[1] Specifically, he sued Sheriff Daniel Edwards, Warden Heath Martin, Assistant Warden Genie Cooley, Chief of Security Pittman, and Dr. Low.[2] Although he has added and withdrawn claims since filing his original complaint,[3] the following claims currently remain:

      1.      "Inhuman Condition's"[4]

      2.      "Protection from Extreme Temperature"[5]

---

[1] Rec. Doc. 1. On February 20, 2020, plaintiff was transferred from the Tangipahoa Parish Jail to the Bayou Correctional Center in Tallulah, Louisiana. Rec. Doc. 4. He is currently incarcerated at the Tensas Detention Center in Waterproof, Louisiana. Rec. Doc. 9.

[2] Plaintiff originally also sued Lieutenant Chapman, Head of Security Garcia, Nurse Joyce, Nurse Rochelle, Nurse Marie, and Nurse Jackson; however, he subsequently amended his complaint to withdraw the claims against those defendants. Rec. Docs. 10 and 14.

[3] Plaintiff originally asserted but later withdrew the following claims in this lawsuit: "Exercise"; "Inmate's Run the Place"; "Excessive Force against Convicted Inmates"; "Legal Mail"; "Accident Prevention"; "Systemic Problems"; "Excessive Noise"; and "Overcrowded." See Rec. Doc. 14.

[4] Rec. Doc. 1-4, pp. 3 and 17.

[5] Id. at pp. 4 and 18.

3.      "Clean Water"[6]

4.      "Law Library"[7]

5.      "Freedom of Religion"[8]

6.      "The Right to Medical Care"[9]

7.      "Denial of Medical Attention: 'Psychiatrist'"[10]

8.      "Mold & Mildew"[11]

9.      "Theft"[12]

## I.  Screening Standards

Plaintiff filed this federal civil action *in forma pauperis*.[13] Concerning such actions, federal

law provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i)      is frivolous or malicious;
> (ii)     fails to state a claim on which relief may be granted; or
> (iii)    seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In addition, because plaintiff is incarcerated, he is also subject to the screening provisions

of 28 U.S.C. § 1915A.   That statute mandates that federal courts "review, before docketing, if

---

[6] Id.
[7] Id.
[8] Id. at pp. 5 and 19.
[9] Id. at p. 19.
[10] Rec. Doc. 5, p. 1.
[11] Id. at p. 2.
[12] See Rec. Docs. 11 and 14.
[13] Rec. Docs. 6 and 7.

feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law similarly requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2)  seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In determining whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).

Pursuant to this screening authority, the undersigned United States Magistrate Judge, after broadly construing plaintiff's complaint, as amended,[14] hereby makes the following recommendations with respect to the claims asserted therein.

## II. Plaintiff's Claims

### A. "Inhuman Condition's"[15]

With respect to this claim, plaintiff alleged:[16]

Official's must take reasonable measure's to guarantee the safety of the inmate's. There's no button to press in case of an emergency in the dorm's at "Tangipahoa Parish Jail". Nor are there any round's being made by any official. There's no ice on the dorm's and there's no water fountain's. There's fire hazard's by broken light's and wire's that's pulled out. Another fire hazard are mattresses with removed mattress cover's. The jail issue's out a cotton foam like material called a mattress.[17]

To the extent that plaintiff is contending that jail officials were negligent for failing to provide better security, that claim is not cognizable in this federal proceeding. See Eason v. Thaler, 73 F.3d 1322, 1329 n.3 (5th Cir. 1996) ("[N]egligence is not a theory for which liability may be imposed under section 1983."); see also Baker v. McCollan, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."); Nesmith v. Taylor, 715 F.2d 194, 195 (5th Cir. 1983) ("It is fundamental to our federal jurisprudence that state law tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right.").

---

[14] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

[15] Rec. Doc. 1-4, pp. 3 and 17.

[16] Plaintiff offers no explanation of his first six claims in his federal complaint itself; therefore, the Court will look to the supporting allegations he provided in the administrative grievance attached to the complaint.

[17] Rec. Doc. 1-4, p. 17.

To the extent that plaintiff is attempting to assert a federal constitutional claim concerning the allegedly inadequate security, it would be a failure-to-protect claim. See, e.g., Scott v. Gusman, Civ. Action No. 10-2706, 2011 WL 666851, at *5 (E.D. La. Feb. 14, 2011); Desdunes v. Gusman, Civ. Action No. 10-3210, 2010 WL 4365809, at *2 (E.D. La. Sept. 30, 2010), adopted, 2010 WL 4362822 (E.D. La. Oct. 21, 2010); Cruz v. Owens, Civ. Action No. 86-5325, 1986 WL 13478 (E.D. Pa. Nov. 26, 1986) (claim that inmate was attacked due to "poor security" analyzed as a failure-to-protect claim).

It is clear that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). The United States Fifth Circuit Court of Appeals has held:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted).

In the instant case, plaintiff does not allege that the purportedly inadequate security ever placed *him* in harm's way, that *he* personally was particularly susceptible to being attacked, or that prison officials were made aware of and yet were deliberately indifferent to *his* need for protection. Indeed, he does not allege that he suffered any physical harm whatsoever resulting from the

allegedly poor security while he was incarcerated at the Tangipahoa Parish Jail.[18]   Instead, he offers nothing more than his vague and conclusory allegation that security was generally inadequate, and it is clear that such allegations do not alone suffice to state a federal claim.  See, e.g., Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *6 (E.D. La. Feb. 22, 2010); Sweat v. Corrections Corporation of America, No. 08-CV0917, 2009 WL 774454, at *2 (W.D. La. Mar. 24, 2009).

Further, even if plaintiff may be implying that the jail may was not compliant with relevant safety codes, it must be noted that while fire and electrical codes "can be helpful in determining whether a lack of fire safety" rises to the level of a constitutional violation, such codes "are not determinative."   Johnson v. Texas Board of Criminal Justice, 281 F. App'x 319, 322 (5th Cir. 2008).  Moreover, where, as here, an inmate does not "allege that anyone had been injured by any type of fire or that [the jail] was built from flammable materials or was particularly susceptible to fires, his allegations do not state a viable claim."  Id.; accord Hunnewell v. Warden, Maine State Prison, No. 93-1917, 1994 WL 52643, at *4 (1st Cir. Feb. 23, 1994) ("[N]ot every deviation from ideally safe conditions constitutes a violation of the constitution.   Moreover, even liberally construed, plaintiff's complaint that his cell is unsafe due to fire hazards is conclusory and fails to state a claim under § 1983." (citation omitted)); Sampson v. King, 693 F.2d 566, 569 (5th Cir. 1982) ("In operating a prison, … the state is not constitutionally required to observe all the safety and health standards applicable to private industry.   Nor is it bound by the standards set by the safety codes of private organizations.   Standards suggested by experts are merely advisory.   A federal court required to gauge the conduct of state officials must use minimum constitutional

---

[18] As noted, plaintiff is no longer detained at the Tangipahoa Parish Jail.  See supra note 1.

standards as the measure." (citations omitted)); <u>Patin v. LeBlanc</u>, Civ. Action No. 11-3071, 2012 WL 3109402, at *17 (E.D. La. May 18, 2012), <u>adopted</u>, 2012 WL 3109398 (E.D. La. July 31, 2012); <u>Davis v. St. Charles Parish Corr. Center</u>, Civ. Action No. 10-98, 2010 WL 890980, at *7 (E.D. La. Mar. 8, 2010); <u>Jernigan v. Dretke</u>, Civ. Action No. H-04-4672, 2005 WL 1185627, at *3 (S.D. Tex. Apr. 29, 2005) ("At the most, Jernigan has alleged a condition that may violate local fire codes. The prison does not violate the Constitution if it fails to comply with all health and safety standards. Although the situation Jernigan describes is far from ideal, it is not so patently egregious or clearly dangerous that the prison officials could be found to be deliberately indifferent if they allowed it to continue. No actual harm has been alleged, and Jernigan's speculative worries do not establish a claim." (citations omitted)).

Lastly, the lack of water fountains or ice on the dorm likewise does not rise to the level of a constitutional violation. There is no requirement that inmates be provided with drinking fountains or chilled beverages. <u>See, e.g.,</u> <u>Maddox v. Gusman</u>, Civ. Action No. 14-2435, 2015 WL 1274081, at *4 (E.D. La. Mar. 19, 2015) ("With respect to [plaintiff]'s complaint that inmates lack a proper water cooler, that allegation, even if true, also does not rise to the level of a constitutional violation."); <u>Young v. Gusman</u>, Civ. Action No. 12-2877, 2013 WL 4648478, at *13 (E.D. La. Aug. 29, 2013) ("Plaintiff's complaints that the water available to drink comes straight from the faucet and is not cold enough … fail[s] to state a constitutional claim. … The Constitution does not require that convicted inmates be provided with particular consumables at a certain temperature or tastiness …."); <u>Wilkerson v. Champagne</u>, Civ. Action No. 03-1754, 2003 WL 22872106, at *2 (E.D. La. Nov. 28, 2003) ("To the extent that plaintiff is asserting that he is entitled to cold drinking

water, he is incorrect. The failure to provide cold water for drinking does not amount to a constitutional violation.").

For these reasons, this claim should be dismissed.

### B. "Protection from Extreme Temperature" [19]

With respect to this claim, plaintiff alleged:

> The Constitution does not require jail's or prison's to be maintained at a comfortable temperature level. However, if there is extreme heat or cold, inmate's constitutional rights are affected. Extreme heat can violate the Constitution. Extreme cold also violates the Constitution. Even brief exposure to very cold temperature's can violate the Constitution, particularly when inmate's are not given blanket's or winter clothing to keep warm. [20]

As plaintiff correctly conceded, the fact that temperatures were uncomfortable cannot alone support a finding that the plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment. Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995). Although he also correctly noted that exposure to *extreme* cold or heat is actionable in some circumstances, his allegations nevertheless fall far short of what is required to establish a constitutional violation. For example, in Johnson v. Texas Board of Criminal Justice, 281 F. App'x 319, 320 (5th Cir. 2008), the United Fifth Circuit Court of Appeals held:

> Exposure to cold temperatures without adequate protection can constitute an Eighth Amendment violation, but Johnson's allegations regarding cold were too vague and conclusory to state a claim of a sufficiently serious deprivation that denied the minimal civilized measure of life's necessities. Johnson's allegations regarding extreme heat also failed to state a viable claim. While Johnson alleged that the temperatures were sometimes uncomfortably hot, he did not allege that he suffered from any heat-related injuries despite being subjected to these conditions numerous times; this is not sufficient to state a constitutional claim.

---

[19] Rec. Doc. 1-4, pp. 4 and 18.
[20] Id. at p. 18.

Id. at 320 (citations and quotation marks omitted). In the instant case, not only did plaintiff fail to allege that he was personally exposed to extreme cold or heat while at the Tangipahoa Parish Jail, he also did not suggest that he suffered any injuries resulting from such exposure.

For these reasons, this claim should be dismissed.

### C. "Clean Water"[21]

With respect to this claim, plaintiff alleged:

> Inmate's may not be denied an adequate amount of clean drinking water. The water here at Tangipahoa Parish Jail is contaminated. The water and the urinal's are the same connected system. The water has a pissy smell and taste. It (The Water) upset's your stomach and cause dizziness and mild headache's. Not being able to drink contaminated water is a denial of not having clean water. Water only come's once or twice between meal's. Through out the rest of the day inmate's have no clean water to drink. There's no water fountain's, ice cooler's nor daily bottled water.[22]

The defendants named with respect to this claim were Sheriff Daniel Edwards, Warden Heath Martin, and Assistant Warden Genie Cooley.[23]

For the reasons already explained *supra*, plaintiff's contentions concerning the lack of water fountains or ice on the dorm do not rise to the level of a constitutional violation. However, the same is not necessarily true of his contention that he was denied adequate clean drinking water.

"Obviously, potable water is a basic human need and must be provided to inmates." Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *4 (E.D. La. Mar. 19, 2015); accord Brooks v. Shinault, Civ. Action No. 6:18cv402, 2019 WL 2240713 (E.D. Tex. Apr. 16, 2019), adopted, 2019 WL 2210696 (E.D. Tex. May 20, 2019); Planker v. Christie, Civ. Action No.

---

[21] Id. at pp. 4 and 18.
[22] Id. at p. 18.
[23] Id. at p. 4. Plaintiff originally also named Lieutenant Chapman as a defendant with respect to this claim; however, he subsequently amended his complaint to withdraw the claims against Chapman. Rec. Docs. 10 and 14.

13-4464, 2015 WL 268847, at *26 (D.N.J. Jan. 21, 2015); <u>Belleza v. Fischer</u>, No. 05 Civ. 98, 2006 WL 3019760, at *4 (S.D.N.Y. Oct. 24, 2006) ("Water that is suitable for drinking … is undeniably one of 'life's necessities,' and … the Eighth Amendment therefore requires that it be supplied to inmates."). Because plaintiff's allegation that he was denied adequate drinkable water could possibly state a cognizable constitutional claim, that claim against Sheriff Daniel Edwards, Warden Heath Martin, and Assistant Warden Genie Cooley should be allowed to proceed pending further development.

### D. "Law Library"[24]

With respect to this claim, plaintiff alleged:

> Tangipahoa Parish Jail is not adequate, pertaining to the law library. Tangipahoa Parish Jail has a small room for inmate's to go too school, participating in program's which, only school exist. There's no room to cite or look up cases. There's only enough room for one special inmate to visit the law library. There's no request form's on the dorm's and it's impossible to catch the law clerk. There's a fee for any inmate that need's to do research in the law library. This system make's research very hard and time-consuming, and some court's have held that, without additional measures, such system's violate a prisoner's right to access the court's. The law library is not available at all.[25]

As an initial matter, the Court notes that it is beyond cavil that inmates have a right of access to the courts – a right that includes a right of access to adequate law libraries or assistance from legally trained personnel needed to file nonfrivolous legal claims challenging their convictions or conditions of confinement. <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977); <u>Jones v. Greninger</u>, 188 F.3d 322, 325 (5th Cir. 1999). However, a claim alleging a violation of this right is not cognizable unless the inmate's position as a litigant was in fact actually prejudiced. <u>See,</u>

---

[24] Rec. Doc. 1-4, pp. 4 and 18.
[25] <u>Id.</u> at p. 18.

e.g., Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999); Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); McDonald v. Steward, 132 F.3d 225, 230-31 (5th Cir. 1998); Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993).  In the instant case, plaintiff did not allege that he suffered any actual prejudice whatsoever from the purportedly inadequate law library and legal services, and it is clear "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis v. Casey, 518 U.S. 343, 351 (1996).  Because plaintiff "has not alleged that he was actually denied access to the court or that any pending litigation was prejudiced, ... [he] therefore has not stated a cognizable § 1983 claim." Clark v. Foti, No. 94-30615, 1995 WL 136127, at *2 (5th Cir. Mar. 8, 1995).  Accordingly, this claim should be dismissed.

### E. "Freedom of Religion"[26]

With respect to this claim, plaintiff alleged:

> I've been here since the 6th of January and there has not been any church or muslim call out.  There's no way to practice your religion.  And Tangipahoa Parish Jail doesn't allow any religious material to enter their jail.  There's no kind of rehabilitation programs at all.  If any their false advertisements.[27]

In addition, he subsequently amended the complaint to add the following allegations:

> There was no church call out, no Muslim call out or any call out for inmates to practice their religion.  Plaintiff has request form's and other evidence on file with Court of request's that was never answered by the official's of Tangipahoa Parish Jail.  Plaintiff now have disbelief about who he believe's in and wonder if there is a GOD.  Plaintiff daughter passed away on Jan. 17th from a heart attack at the age of 23.  Official's then shipped plaintiff to another jail where's there no religion call out's as well.  Receiving no medication, no religion call out's, and my daughter death all at a short time at Tangipahoa Parish Jail make's plaintiff believe that GOD let all of this happen.  And on the day I was shipped my property disappeared and GOD hasn't changed anything yet.  I haven't been getting on my knee's to pray and

---

[26] Id. at pp. 5 and 19.
[27] Id. at p. 19.

11

> my pressure has been high and some of the inmate's who stabbed me at Orleans Parish Jail are here at Bayou Correctional Center.   There's no chaplain at Tangipahoa Parish Jail and there's no way to order religious material.  There's nothing but black shadow's I call demon's and their also at this place as well.  I don't know how to talk to GOD anymore and there's no psychiatrist.[28]

The defendants named with respect to this claim were Sheriff Daniel Edwards, Warden Heath Martin, Assistant Warden Genie Cooley, and Chief of Security Pittman.[29]

To the extent that plaintiff is claiming that his rights were violated as a result of the lack of rehabilitation programs at the Tangipahoa Parish Jail, that aspect of his claim must be denied because there is no constitutional right to such services or programs in prison.  See, e.g., Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988) ("[H]owever worthwhile and prudent such a program might be, ... a state has no constitutional obligation to provide basic educational or vocational training to prisoners."); Oatis v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-6266, 2009 WL 3566120, at *2-3 (E.D. La. Oct. 29, 2009) ("Prisoners have no constitutional right to participate in educational, work release or other rehabilitation programs, particularly when no such programs exist at the facility."); Oglesby v. Gusman, Civ. Action No. 09-3593, 2009 WL 3254145, at *2 (E.D. La. Oct. 7, 2009); Sampson v. Corrections Corporation of America, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009) ("Prisoners do not have a constitutional right to 'social services.'  Nor do inmates have a protected liberty interest in specific educational programs, recreation opportunities, or in avoidance of being transferred to facilities where the programs are less comprehensive.  The United States Constitution does not mandate educational, rehabilitative, or vocational programs." (citation omitted)); Wilbon v. Gusman, Civ. Action No.

---

[28] Rec. Doc. 13, p. 2.
[29] Rec. Doc. 1-4, p. 5.  Plaintiff originally also named Lieutenant Chapman and Head of Security Garcia as defendants with respect to this claim; however, he subsequently amended his complaint to withdraw the claims against those defendants. Rec. Docs. 10 and 14.

05-2443, 2006 WL 2119458, at *2 (E.D. La. July 25, 2006). Therefore, while plaintiff's desire to better himself was commendable, he simply had no constitutional right to access to rehabilitation services and programs while incarcerated at the Tangipahoa Parish Jail.

However, to the extent that plaintiff is claiming that he was denied the opportunity to practice his religion at the facility, the Court cannot say that that aspect of his claim is frivolous or fails to state a cognizable claim. On the contrary, the United States Supreme Court has held:

> [C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison. Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. … Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security.
>
> In considering the appropriate balance of these factors, we have often said that evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution under examination. To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. We recently restated the proper standard: "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, [482 U.S. 78, 89 (1987)].

<u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348-49 (1987) (citations, footnotes, quotation marks, and textual alterations omitted). Because a response from the defendants will be necessary in order for this Court to determine whether their regulations inhibiting the practice of religion at the Tangipahoa Parish Jail were "reasonably related to legitimate penological interests," this aspect of plaintiff's claim against Sheriff Daniel Edwards, Warden Heath Martin, Assistant Warden Genie Cooley, and Chief of Security Pittman should be allowed to proceed pending further development.

**F.  "The Right to Medical Care"**[30]/ **"Denial of Medical Attention:  'Psychiatrist'"** [31]

With respect to these two related claims, after generally summarizing the law regarding the right of inmates to medical care, plaintiff initially simply alleged:  "At Tangipahoa Parish Jail there's no way to get sick call form's because the nurse only goes to dorm's who have medication on her medicine cart. The nurse ignore's everyone else."[32]

However, in a subsequent amendment to the complaint, plaintiff added Dr. Low as a defendant and further alleged:

> On 2-18-20, plaintiff was called to visit Dr. Low (psychiatrist) on a television visit.  Dr. Low asked plaintiff what was his last mental health medication's.  Plaintiff told Dr. Low his last medication's were not was he was trying to give me. I then asked Dr. Low can he send for my mental health record's from Angola and he refused.  Dr. Low also did the same thing to an inmate named Logan Smith.  Dr. Low told me that this jail doesn't issue the med's I need. I then asked Dr. Low can he help me get an transfer to a D.O.C. facility so I can get the right med's.  Dr. Low did not answer but tried to give me med's that didn't work in the past and without looking at my past mental health records.[33]

Plaintiff then again amended the complaint adding the following allegations:

Denial of medical attention, plaintiff states: he went to Tangipahoa Parish Jail on the 6th of January and left on the 20th of February.  During plaintiff incarceration at Tangipahoa Parish Jail he never received any mental health medication.  A few day's before plaintiff left Tangipahoa Parish Jail he talk to a psychiatrist and the psychiatrist asked the plaintiff why do he take medication and the plaintiff told the psychiatrist he was stabbed (51) time's, (5) time's, and (1) time in the same jail, Charley James v. Marlin Gusman #2:14-cv-00591-SS.  The psychiatrist then asked the plaintiff what type of medication he was on and the plaintiff told him "seraquel".  The psychiatrist then stated that he was going to give the plaintiff "zoloft" and the plaintiff told the psychiatrist "zoloft" doesn't work and that he tried "zoloft" at Angola.  The psychiatrist then stated that he would give plaintiff "selexa" and plaintiff stated that Dr. Gamble gave him "selexa" at Angola and he can't hold that medication on his stomach.  Plaintiff stated that "selexa" make's him vomit.  Plaintiff then asked the psychiatrist do he have his mental health record's and the

---

[30] Rec. Doc. 1-4, p. 19.
[31] Rec. Doc. 5, p. 1.
[32] Rec. Doc. 1-4, p. 19.
[33] Rec. Doc. 5, p. 3.

psychiatrist said no.  Plaintiff then asked for his normal medication "seraquel" and the psychiatrist said the jail doesn't issue that type of pill.  Plaintiff then asked the psychiatrist if he could get him shipped to a D.O.C. prison so he can receive the right med's and the psychiatrist ignore plaintiff question and asked plaintiff did he want "selexa" and plaintiff told him no and the visit ended.  Plaintiff remember's his psychiatrist visit being on the 19th because the nurse tried to give plaintiff the "selexa" the next day and the same day plaintiff received mail from the Federal Court plaintiff was shipped.  For this claim plaintiff is asking to be compensated for the time he didn't take his med's and the time it took plaintiff to see a psychiatrist.  This caused plaintiff to not do normal thing's, see thing's normal people can't see and plaintiff was charged for (2) psychiatrist visits and for medication he couldn't use from past experience's of terrible thing's.  Plaintiff also states that the official's should've had his past history of mental illness.  Plaintiff has been on mental health medication since 2014.  Where did his mental health record's disappeared to?[34]

It is clear that a prisoner has a constitutional right to medical care; however, it is also clear that the right is a strictly limited one.  Specifically, that right is violated *only* if the prisoner's "serious medical needs" are met with "deliberate indifference" on the part of penal authorities.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).  In the instant case, plaintiff identifies only one medical need for which he required treatment: an unspecified mental health impairment.  However, even if the Court assumes that plaintiff's impairment constituted a "serious medical need," this claim nevertheless fails because he cannot establish that the need was met with "deliberate indifference" for the following reasons.

"Deliberate indifference is an extremely high standard to meet," requiring a plaintiff to "show that the officials refused to treat him, ignored his complaints, intentionally treated him

---

[34] Rec. Doc. 13, p. 1.

incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks omitted). In other words, "[d]eliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); accord Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999). Therefore, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference …." Alton v. Texas A&M University, 168 F.3d 196, 201 (5th Cir. 1999).

Here, plaintiff alleges that his medical treatment for his mental health impairment was inadequate in three respects: (1) he received no treatment for his condition from January 6, 2020, the date on which he arrived at the Tangipahoa Parish Jail, until February 18 or 19, 2020, the date of his appointment with the psychiatrist, Dr. Low; (2) Dr. Low refused to prescribe the specific medication plaintiff wanted (Seroquel[35]), instead offering only two alternative medications (Zoloft[36] and Celexa[37]), both of which plaintiff refused; and (3) Dr. Low did not order plaintiff's medical records from his prior facility.

As to the fact plaintiff's mental health impairment went untreated from the day he entered the facility until he consulted with the Dr. Low approximately six weeks later, that did not rise to the level of a constitutional violation. A six-week delay in obtaining an appointment with a specialist, such as a psychiatrist, does not strike the Court as particularly unusual. On the contrary, "delays to see medical specialists for non-emergency care are a fact of life routinely experienced

---

[35] Seroquel is an antipsychotic medication used to treated schizophrenia, bipolar disorder, and depression.
[36] Zoloft is a selective serotonin reuptake inhibitor ("SSRI") used to treat depression, obsessive-compulsive disorder, posttraumatic stress disorder, premenstrual dysphoric disorder, social anxiety disorder, and panic disorder.
[37] Celexa is a SSRI used to treat depression.

by both prisoners and nonprisoners alike." Trahan v. Swartz, Civ. Action No. 19-10145, 2019 WL 5846994, at *6 (E.D. La. Oct. 15, 2019), adopted, 2019 WL 5811292 (E.D. La. Nov. 7, 2019); accord Dickerson v. Murray, Civ. Action No. 9:11cv78, 2012 WL 1314216, at *11 (E.D. Tex. Feb. 28, 2012) ("Even in the free world, there is a waiting time between a referral from a physician and a visit to a specialist, particularly in a managed care setting ...."), adopted, 2102 WL 1314109 (E.D. Tex. Apr. 16, 2012). See also Cooper v. Calcasieu Correctional Center, Civ. Action No. 2:13-cv-2215, 2014 WL 4823695, at *3 (W.D. La. Sept. 25, 2014) (holding that an inmate's "dissatisfaction with the timing of his appointment does not raise his claim to a constitutional dimension").

As for Dr. Low's refusal to prescribe Seroquel, it is clear that "[t]he refusal to provide medicine that was prescribed at another facility or by a different doctor does not rise to the level of deliberate indifference." Simon v. LeBlanc, 623 F. App'x 276, 277 (5th Cir. 2015). Rather, "a doctor's decision ... as to which medications to prescribe is a matter for medical judgment," Rixner v. Laravia, Civ. Action No. 11-2090, 2012 WL 1836256, at *10 (E.D. La. May 21, 2012), and Dr. Low was therefore entitled to exercise his own medical judgment on how best to treat plaintiff's medical needs. Moreover, a federal court will not normally second-guess such medical decisions in a federal civil rights action – even if the doctor's independent medical judgment was ultimately wrong or the prisoner disagreed. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) ("Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."); Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) ("Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs."). That remains true even if the medication chosen by the doctor is not as

effective as an alternative the prisoner would prefer, because the fact that a prisoner's medical care "may not have been the best money could buy" is insufficient to establish a federal violation. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978).

The Court is mindful of the fact that plaintiff nevertheless wanted to be prescribed Seroquel based on his past experiences. However, that simply is not determinative, because an inmate has no right to demand that he be given a particular medication to treat his serious medical need. See, e.g., Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Jacobs v. McVea, Civ. Action No. 14-552, 2014 WL 2894286, at *7 (E.D. La. June 25, 2014).

Lastly, as for Dr. Low's failure to order plaintiff's medical records from his prior facility, that contention fares no better for two reasons.

First, a prison doctor's decision to prescribe medication to an inmate without first obtaining his prior medical records would not be indicative of deliberate indifference. If it was a violation at all, which is debatable, it was nothing more than negligence or medical malpractice at worst. However, while allegations of medical malpractice or negligence may suffice to support a *state-law claim* actionable in the state courts, they are insufficient to state a *federal constitutional claim* cognizable in federal court. Estelle v. Gamble, 429 U.S. 97, 107 (1976) (noting that the proper forum for a claim of "medical malpractice" is state court); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) ("[N]egligent medical care does not constitute a valid section 1983 claim."); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7,

2004) ("Simple medical malpractice or negligence does not constitute a violation of an inmate's constitutional rights. It is, instead, a violation of a tort duty of care and must be pursued in state court.").

Second, in any event, plaintiff noted that he was transferred from the Tangipahoa Parish Jail (and, therefore, presumably out of Dr. Low's care) on February 20, 2020,[38] no more than two days after the appointment with Dr. Low.[39] Even in the unlikely event that the records could have been obtained and a different treatment prescribed with that brief period, plaintiff has not alleged that he experienced any actionable harm during those two days.

For these reasons, these claims should be dismissed.

### G. "Mold & Mildew"[40]

Plaintiff made no factual allegations concerning this claim. Nevertheless, in any event, although prisons should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." McAllister v. Strain, Civ. Action No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); accord Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."). Therefore, the mere fact that plaintiff was exposed to mold and mildew at the Tangipahoa Parish Jail does not rise to the level of a constitutional violation. See, e.g., Heaton v. Normand, Civ. Action No. 17-405, 2017 WL 3268341, at *4 (E.D. La. June 22, 2017) ("[T]he jurisprudence has repeatedly held that the mere

---

[38] Rec. Doc. 13, p. 1.
[39] As noted, plaintiff's allegations regarding the date of his appointment with Dr. Low were inconsistent; on one occasion he gave the date of February 18, 2020, while he gave the date of February 19, 2020 on another. Compare Rec. Doc. 5, p. 3 with Rec. Doc. 13, p. 1.
[40] Rec. Doc. 5, p. 1.

fact that mold is present in a jail does not render an inmate's confinement unconstitutional."), adopted, 2017 WL 3252813 (E.D. La. July 31, 2017); Simmons v. Gusman, Civ. Action No. 14-1907, 2015 WL 151113, at *4 (E.D. La. Jan. 12, 2015) ("[T]he mere fact that fungus, mold, mildew, and rust are present [in a jail] does not warrant relief."); Eaton v. Magee, Civ. Action No. 2:10-cv-112, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); Barnett v. Shaw, No. 3:11-CV-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (holding that allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), adopted, 2011 WL 2214383 (N.D. Tex. June 7, 2011); Reynolds v. Newcomer, Civ. Action No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (finding that plaintiff's complaints of "the presence of black mold in living areas, eating areas, and shower areas" were nothing more than "a de minimis level of imposition with which the Constitution is not concerned" (quotation marks omitted)); McCarty v. McGee, No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").

For these reasons, this claim should be dismissed.

### H.  "Theft" [41]

With respect to this claim, plaintiff alleged:

Plaintiff was shipped to Bayou Correctional Center after official's seen his complaint from the Eastern District of Louisiana.

---

[41] See Rec. Doc. 11 and 14.

The same day plaintiff received his mail his name was called to be shipped and all of plaintiff property came up missing. Plaintiff was shipped with (4) or (5) other inmate's who received all of their property. My property was trashed because of the complaint I filed against Tangipahoa Parish Jail. Plaintiff is requesting to add theft charge's against Sheriff Daniel Edwards for responsibility.

Plaintiff is missing:

Shoe's – value $75.00
Sweat pant's – value $15.00
Sweat pant's – value $12.00
Headphones – value $80.00
Radio – value $25.00
Koss E/Q – value $30.00
JP5 player – value $64.00 over $1,200 music, games, and programs[42]

Liberally construed, the foregoing allegations actually assert two distinct (albeit interrelated) claims: a straightforward property-deprivation claim and a retaliation claim. However, both of those claims should be dismissed for the following reasons.

First, the property-deprivation claim simply is not cognizable in federal court. In Parratt v. Taylor, 451 U.S. 527 (1981), the United States Supreme Court held that where a state actor, through his random and unauthorized actions, negligently deprives a prisoner of his property, there is no due process violation if the state provides an adequate postdeprivation remedy. In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court extended that holding to intentional deprivations of property. In Daniels v. Williams, 474 U.S. 327 (1986), the Supreme Court then overruled Parratt in part, holding that merely negligent deprivations of property simply do not implicate the Due Process Clause at all.

Therefore, it is of no consequence whether a Louisiana inmate alleges that he was deprived of his property through negligence or an intentional act, because "in neither instance does he state

---

[42] Rec. Doc. 11, p. 1.

a valid § 1983 action for deprivation of property." <u>Geiger v. Jowers</u>, 404 F.3d 371, 374 (5th Cir. 2005). If he is alleging negligence, his claim is barred by <u>Daniels</u>. If he is alleging intentional conduct, the claim is barred by <u>Hudson</u>, because Louisiana law clearly provides an adequate postdeprivation remedy, i.e. a tort suit brought in state court. <u>Marshall v. Norwood</u>, 741 F.2d 761, 764 (5th Cir. 1984); <u>Bennett v. Louisiana Department of Public Safety and Corrections</u>, No. 02-30593, 2003 WL 1109690 (5th Cir. Feb. 19, 2003); <u>Arnold v. Inmate Accounts</u>, No. 02-30219, 2002 WL 31017153 (5th Cir. Aug. 20, 2002); <u>Odom v. St. Tammany Parish S.O.</u>, Civ. Action No. 09-0109, 2009 WL 1147925, at *3 (E.D. La. Apr. 28, 2009). Accordingly, plaintiff may not pursue his theft claim in this federal forum. If he wishes to assert such a claim, he must do so in the *state courts*.

Second, plaintiff also alleged that he was deprived of his property as a form of *retaliation* for his filing of this lawsuit. Retaliation is an actionable federal claim. Nevertheless, with respect to such a claim, the United States Fifth Circuit Court of Appeals has cautioned:

> It is well established that prison officials may not retaliate against an inmate because that inmate exercised his right of access to the courts. To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. Causation requires a showing that but for the retaliatory motive the complained of incident would not have occurred.

<u>McDonald v. Steward</u>, 132 F.3d 225, 231 (5th Cir. 1998) (citation, internal quotation marks, and ellipsis omitted).

Therefore, the Fifth Circuit has held: "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties, and so retaliation claims must be regarded with skepticism …." <u>Woods v. Smith</u>, 60 F.3d 1161, 1166

(5th Cir. 2001) (quotation marks omitted).  Accordingly, "trial courts must carefully scrutinize these claims." Id.  To that end, courts require that inmates claiming retaliation either (1) produce direct evidence of retaliatory motivation or (2) allege a chronology of events from which retaliation may plausibly be inferred. Id.

In the instant case, plaintiff has produced no direct evidence of a retaliatory motivation. Further, while it is obviously possible that his property was stolen or destroyed in retaliation for his filing this lawsuit, the mere fact that it is *possible* to infer a retaliatory motive from a chronology of events does not suffice.  Rather, again, a plaintiff's retaliation claim is actionable only if it is *plausible* to infer a retaliatory motive based on the sequence of events.  Here, the Court simply cannot say that plaintiff's allegations crossed the line from possibility to plausibility for the following reasons.

First, the mere fact that an action was taken against a prisoner after he filed a lawsuit is not alone sufficient to constitute a chronology of events from which one can infer a retaliatory motive. Without more, the connection between the two events is simply "too tenuous to support a claim of retaliation." Thunderhorse v. Pierce, 418 F. Supp. 2d 875, 898 (E.D. Tex. 2006), aff'd in part, vacated in part on other grounds, 232 F. App'x 425 (5th Cir. 2007); accord Armenta v. Chapman, 371 F. App'x 452, 456 (5th Cir. 2010); Norman v. Prince, Civ. Action No. 10-0605, 2011 WL 6369977, at *6 (M.D. La. Nov. 3, 2011), adopted, 2011 WL 6369840 (M.D. La. Dec. 19, 2011); Allen v. Holden, Civ. Action No. 10-753, 2011 WL 4737416, at *6-7 (M.D. La. Aug. 29, 2011), adopted, 2011 WL 4729831 (M.D. La. Oct. 5, 2011).  To hold otherwise would allow an inmate to file suit and "then forever after claim that any adverse actions by prison officials were

necessarily motivated by retaliatory intent from the prior legal action." Thunderhorse, 418 F. Supp. 2d at 898.

Second, *even if* the Court assumes that Sheriff Edwards or any of his subordinates were aware of this lawsuit – an assumption which is arguably suspect in light of the fact that the lawsuit was never served on the defendants – the Court cannot reasonably infer that the lawsuit left them in such a fit of pique that they would resort to unlawful retaliation. On the contrary, penal officials are routinely sued by disgruntled inmates who feel that they have been treated unfairly – such lawsuits simply come with the job. Of course, "it is conceivable that a *particular* lawsuit might anger an official, such as if the lawsuit required substantial resources to defend or resulted in liability or public condemnation …." Spikes v. Seal, Civ. Action No. 16-2794, 2016 WL 8469636, at *4 (E.D. La. Nov. 23, 2016), adopted, 2017 WL 959392 (E.D. La. Mar. 13, 2017). However, that cannot be plausibly inferred here. As this lawsuit is still in the preliminary screening stage, the defendants have not yet been required to take *any* action to defend against it, and there has been *no* judicial finding *adverse* to them. Accordingly, there is no reason whatsoever to infer that this lawsuit motivated them to engage in retaliatory actions. See Allen v. St. Tammany Parish, Civ. Action No. 17-4091, 2018 WL 558503, at *6 (E.D. La. Jan. 1, 2018), adopted, 2018 WL 537495 (E.D. La. Jan. 24, 2018).

In summary, plaintiff's retaliation claim is actionable *only if* the defendants were motivated by a desire to punish plaintiff for exercising a specific constitutional right. Here, plaintiff produced no direct evidence of such a motivation, and a retaliatory motive cannot be inferred merely from the fact that he filed this lawsuit. Rather, his allegations of a retaliatory motive in this case were wholly speculative and conclusory, and they therefore do not suffice to survive the screening

process mandated by federal law.  See Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988) (dismissing as frivolous conclusory allegations that a prison official's action was taken in retaliation for the prisoner's prior complaints); see also Moore v. Thaler, 436 F. App'x 311, 312 (5th Cir. 2011) (holding that a prisoner's "conclusional allegations, based solely on his personal beliefs, were not sufficient to support a valid constitutional claim for ... retaliation").

For these reasons, these claims should be dismissed.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's claim against Sheriff Daniel Edwards, Warden Heath Martin, and Assistant Warden Genie Cooley for the denial of clean water be allowed to proceed pending further development.

It is **FURTHER RECOMMENDED** that plaintiff's claim against Sheriff Daniel Edwards, Warden Heath Martin, Assistant Warden Genie Cooley, and Chief of Security Pittman for the denial of plaintiff's freedom to exercise his religion also be allowed to proceed pending further development.

It is **FURTHER RECOMMENDED** that plaintiff's claim for theft of his personal property be **DISMISSED WITHOUT PREJUDICE** to his right to pursue that claim in the state courts.

It is **FURTHER RECOMMENDED** that all of plaintiff's remaining claims against all remaining defendants be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this___7th___ day of April, 2020.


_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**